**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MARTIN ANDERSEN,
          Appellant,

      v.

DEPARTMENT OF DEFENSE,
          Agency.

DOCKET NUMBER
DC-1221-19-0058-W-1

DATE: November 17, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Martin Andersen</u>, Churchton, Maryland, pro se.

<u>Kara Greenberg</u> and <u>Robert Andrew Schafer</u>, Arlington, Virginia, for the
    agency.

<u>Mollie A. Murphy</u>, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of this appeal.

## FINAL ORDER

¶1     The appellant has filed a petition for review of the initial decision, which
dismissed this individual right of action (IRA) appeal for lack of jurisdiction.

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to explain why we may rely on the parties' non-Board settlement agreement in our jurisdictional determination, discuss the appellant's contention that the agency breached the agreement, address whether the agreement included terms that were against public policy, and find that the agreement's waiver provision covers an alleged personnel action that occurred after the date of the agreement but before the appellant's separation and that the appellant failed to establish jurisdiction over alleged personnel actions occurring after his employment, we AFFIRM the initial decision.

## BACKGROUND

¶2      The agency appointed the appellant in December 2005 to a 3-year term as a civilian faculty member and Publication and Communication Specialist with its Center for Hemispheric Defense Studies (CHDS), National Defense University (NDU), located at Fort Lesley J. McNair, in Washington, D.C. Initial Appeal File (IAF), Tab 1 at 5, Tab 61 at 47-48, 52, Tab 99 at 4, 65. The appointment was made pursuant to 10 U.S.C. § 1595, which permits the Secretary of Defense to

employ civilian faculty members at certain Department of Defense (DOD) schools. IAF, Tab 1 at 14, Tab 57 at 5, Tab 70 at 16, Tab 99 at 4. The agency extended the appointment in September 2008 for a 2-year period ending in December 2010, and further extended it in October 2010 for an additional 1-year period ending in late December 2011. IAF, Tab 99 at 4.

¶3    In May 2011, the appellant copied several high-level agency officials, as well as other individuals outside the agency, on an email he sent to his supervisor addressing a recent dispute with the supervisor and alleging wrongdoing at the CHDS. *Id.* at 19-22. The agency thereafter placed him on administrative leave and restricted his access to his work building and the NDU computer system. *Id.* at 14-27. This restriction coincided with a period in which the appellant was scheduled for major surgery. *Id.* at 14, 16, 19, 22. After his surgery, the appellant unexpectedly visited the CHDS on June 16, 2011, and, according to the agency, "transmitted what were interpreted as verbal threats of an ambiguous nature," which caused an employee to feel frightened and concerned for her safety. *Id.* at 63, 65. This resulted in the agency denying the appellant access to CHDS facilities and banning him from access to NDU buildings and assets. *Id.* at 65, 67. Also during June and July 2011, the appellant sent emails critical of CHDS from his personal email accounts to individuals inside and outside of the organization. *E.g.*, IAF, Tab 23 at 6-7, Tab 25 at 6, Tab 26 at 6-8, Tab 32 at 38-39. The appellant's supervisor issued him instructions to "cease and desist" from "send[ing] emails related to CHDS business from [his] personal computer to addressees outside of CHDS." IAF, Tab 3 at 13, Tab 34 at 43, Tab 61 at 52.

¶4    On August 22, 2011, the agency notified the appellant that his appointment, which was due to expire on December 24, 2011, would not be renewed. IAF, Tab 1 at 14. On September 13, 2011, the agency proposed his suspension for 4 calendar days based on a charge of failure to follow guidance and instructions. IAF, Tab 61 at 52-53. The agency alleged that the appellant had failed to cease and desist from sending communications alleging improper actions

by CHDS personnel to persons outside of CHDS and official investigative channels. *Id.* at 52. On September 30, 2011, the agency found that the reasons for the proposal were sustained and a 3-day suspension was warranted, but held the suspension in abeyance pending the appellant's separation upon expiration of his appointment. IAF, Tab 99 at 71-72. The decision notice provided that, if no further incidents occurred, the suspension would not be imposed and would not become a part of his official employment record. *Id.* at 71.

¶5 On or about December 21, 2011, the parties entered into a settlement agreement under which the agency agreed to extend the appellant's employment until March 31, 2012, amend his last performance evaluation, sign a letter of recommendation in support of his future employment opportunities, and remove any derogatory information from his personnel file. *Id.* at 74-75, 79. In exchange, the appellant agreed not to institute a lawsuit under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1974, and the Whistleblower Protection Act. *Id.* at 74. He also agreed to "cease and desist any and all negative public discussion" of agency personnel, issue a public apology, and not file any new complaints, claims, grievances, proceedings, appeals, or lawsuits against the agency in any judicial or administrative forum, including the Board, the Inspector General, and the Office of Special Counsel (OSC), "arising out of his employment with the Agency, and all related matters." *Id.* at 75.

¶6 The settlement agreement provided that "no future claims or complaints of any kind arising out of [the appellant's] past employment with the Agency will be pursued . . . except for the purposes of enforcing this agreement." *Id.* It also provided that if a court of competent jurisdiction determined that the settlement agreement included an illegal provision, that portion of the agreement would be disregarded, while the balance of the agreement would be enforced as if the illegal portion had not been a part of the agreement. *Id.* at 76. The parties further agreed that if the appellant believed that the agency had failed to comply with the

terms of the agreement, the procedures set forth at 29 C.F.R. § 1614.504 would govern, under which the appellant "shall" notify the agency's equal employment opportunity (EEO) director of any breach and could appeal any adverse agency decision on compliance to the Equal Employment Opportunity Commission (EEOC). *Id.* at 77-78. The agreement was signed by the appellant, his attorney representative, and the CHDS director. *Id.* at 79. The appellant acknowledged that he had carefully read the agreement, fully understood its provisions, and voluntarily entered into the agreement. *Id.* at 77. The appellant's employment with the agency ended when his extended term appointment was not renewed in March 2012. IAF, Tab 1 at 3, 5, Tab 57 at 6.

¶7        Over 6 years later, on May 2, 2018, the appellant filed a complaint with OSC asserting that, in reprisal for disclosures he made to the DOD Office of Inspector General (OIG) and others, including Members of Congress, the agency renewed his 3-year appointment[2] for only 2 years and 1 year, respectively, then failed to renew his appointment, downgraded his annual performance evaluation, and prevented him from accessing the facilities at the NDU. IAF, Tab 1 at 15, 20-36. OSC terminated its investigation and informed the appellant of his right to file an IRA appeal with the Board. *Id.* at 4, 94. The appellant timely filed this appeal alleging that the agency took personnel actions against him based on whistleblowing disclosures. *Id.* at 1, 5. Among other things, he alleged that the agency improperly pressured him into signing the settlement agreement, did not renew his appointment in 2011, and rendered him virtually unemployable in his field. *Id.* at 5-6. The appellant also claimed that the settlement agreement violated current and future laws and "sought to prevent [him] from reporting to an

---

[2]  The appellant describes his term appointments as employment "contracts." *E.g.*, IAF, Tab 1 at 6, 20-21, Tab 2 at 4. The record reflects that the appellant was actually employed under a series of term appointments, IAF, Tab 1 at 14, Tab 61 at 19, 26, 48; *see* 10 U.S.C. § 1595, and not as a contractor.

OIG, Members of Congress, or the OSC prior violations of rule, regulation and law." *Id.* at 5. The appellant requested a hearing. *Id.* at 2.

¶8 The administrative judge ordered the appellant to identify his disclosures, protected activities, personnel actions, and how the disclosures and protected activities were contributing factors in those personnel actions, as well as how those allegations were brought to the attention of OSC. IAF, Tab 5 at 7-9. After the appellant filed his responses to the order, IAF, Tabs 11-15, 17-35, the agency moved to dismiss the appeal for lack of jurisdiction. IAF, Tab 57 at 4-15. As relevant here, the agency argued that the appeal was barred by the settlement agreement under which he agreed not to file a Board appeal arising out of his employment with the agency. *Id.* at 10-14.

¶9 The administrative judge ordered the appellant to file evidence and argument showing by preponderant evidence that the settlement agreement or the waiver of Board appeal rights set forth therein was invalid. IAF, Tab 79 at 4. In this regard, the administrative judge informed the appellant that a party may challenge the validity of a settlement agreement, regardless of whether it has been entered into the record for enforcement, if the agreement is unlawful, involuntary, or the result of fraud or mutual mistake. *Id.* at 2. She noted that the appellant may challenge the enforceability of a waiver of Board appeal rights by showing that it resulted from agency duress or bad faith. *Id.* The administrative judge also informed the appellant that he would be entitled to a jurisdictional hearing if he made a nonfrivolous allegation meeting the above criteria. *Id.*

¶10 After the parties filed their responses, and based on the written record, the administrative judge dismissed the appeal for lack of jurisdiction. IAF, Tab 110, Initial Decision (ID) at 1, 11. She found that the appellant did not make a nonfrivolous allegation that the settlement agreement or the waiver of Board appeal rights set forth therein was unlawful, involuntary, or otherwise the result of bad faith or duress. ID at 6-8.

¶11     The administrative judge further found that the appellant did not make a nonfrivolous allegation of Board jurisdiction with respect to an agency investigation into his allegations of wrongdoing that occurred between the December 2011 execution of the settlement agreement and his March 2012 separation.  ID at 10.  Similarly, the administrative judge determined that the appellant did not make a nonfrivolous allegation of Board jurisdiction with respect to alleged reprisal that occurred after his separation from the agency.  ID at 10-11.  Accordingly, she dismissed the appeal for lack of jurisdiction.

¶12     The appellant has filed a timely petition for review of the initial decision.  Petition for Review (PFR) File, Tab 2.  The agency has not filed a response to the petition for review.  After the close of the record on review, the appellant filed numerous motions for leave to file additional pleadings.[3]  PFR File, Tabs 6, 8, 10,

---

[3] We deny the appellant's motions for leave to file additional pleadings.  The appellant asserts, among other things, that he has evidence from a former colleague that another complaint had been filed against the individual the appellant asserts retaliated against him for his whistleblowing, as well as evidence that the DOD OIG is "looking into" disclosures made about this individual.  PFR File, Tab 6 at 4-5.  He also requests to file correspondence he received from the Acting Secretary of the Navy, testimony and information provided to Congress, as well as other materials, regarding the DOD IG and the Defense Intelligence Agency (DIA), articles from newspapers, foreign policy and academic journals, correspondence he sent to the International Criminal Court, "journalism sources" about neo-Nazi sympathizers at the NDU, the arrest of officials formerly associated with the CHDS NDU, documentation connecting a winner of an NDU award to drug cartels and death squads, contemporaneous information regarding extremist and undercover groups within the U.S. military, and current employment information regarding a retired U.S. Navy Vice Admiral who served as President of the NDU.  *E.g.*, PFR File, Tab 8 at 4-5, Tab 10 at 3, Tab 13 at 3, Tab 15 at 3, Tab 18 at 3, Tab 20 at 3, Tab 22 at 3, Tab 25 at 3, Tab 27 at 3, Tab 30 at 4-6, Tab 32 at 4-6, Tab 34 at 4-6, Tab 37 at 4-7, Tab 58 at 5-8, Tab 63 at 4-7, Tab 68.  He also seeks to file testimony and recollections from a dozen Federal officials from various agencies regarding extremism at the NDU, unspecified national security evidence he submitted to the Naval Criminal Investigative Service, documentation regarding the current use of the Racketeer Influenced and Corrupt Organizations Act, a book written by Washington Post reporters regarding extremists in the U.S military, a disclosure he will be making to the International Criminal Court regarding Jewish Councils during World War II, his application for an agency award in 2001, information regarding physical violence against those who speak truth to power, police records accompanying certain disclosures, documents such as an interview and case decisions reflecting that an

13, 15, 18, 20, 22, 25, 27, 30, 32, 34, 37, 40, 43, 45, 51, 53, 55, 58, 60, 63, 67-68, 70, 73, 75, 77.

## ANALYSIS

<u>The Board will consider the parties' settlement agreement in determining whether the appellant has made a nonfrivolous allegation of jurisdiction.</u>

¶13        After the initial decision was issued in this case, the U.S. Court of Appeals for the Federal Circuit issued its decision in *Hessami v. Merit Systems Protection*

---

administrative judge at the Board once defended the Department of Homeland Security in litigation against an allegation of whistleblower reprisal, an article from a Mexican newspaper regarding the killing of members of the Mexican military in the fight against drug trafficking and illegal firearms, news articles, legal briefs, and other documents regarding killings, drug trafficking, and other wrongdoing by the Chilean, Colombian, Honduran, and Uruguayan militaries and other South American dictatorships, messages of support from colleagues, an article from an Argentinian newspaper regarding child adoptions in Chile, articles regarding a Nazi salute by a university professor and the recruitment of U.S. state and local police by foreign intelligence agencies, "public and private" materials including news articles and an academic "report" showing that individuals in the U.S. military and the NDU promoted and assisted "secret wars" and coups in Latin America and Africa by individuals associated with drug trafficking or other wrongdoing, another whistleblower's disclosures regarding drug use by U.S. pilots, and notification from an international journal that it will be publishing an article based on his legal case. PFR File, Tabs 40, 43, 45, 51, 53, 55, 58, 60, 63, 67, 70, 77. The appellant further seeks to "add record information" and submit documentation regarding the alleged involvement of DIA officials in, and their reactions to, the COVID-19 pandemic and a possible "coup against the sitting [P]resident of the United States." PFR File, Tab 63 at 5-6, 8. In addition, the appellant seeks to introduce evidence relating to an award received by an NDU colleague who had praised the appellant, as well as a book on the psychological impact of whistleblower reprisal. PFR File, Tabs 73, 75.

When, as here, the record has closed on review, the Board will not accept any additional evidence or argument unless the party seeking to submit the new evidence or argument shows it is new and material. *Stoglin v. Department of the Air Force*, 123 M.S.P.R. 163, ¶ 5 n.3 (2015), *aff'd per curiam*, 640 F. App'x 864 (Fed. Cir. 2016); 5 C.F.R. § 1201.114(k). To be material, the appellant's submissions must be of sufficient weight to warrant a different outcome. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). The appellant has not shown that some of the documents he seeks to submit, such as his correspondence with a U.S. Senator, are new. *See, e.g.*, IAF, Tab 22 at 3. He also has not shown that the remaining documents would address the jurisdictional issues in this case. Therefore, he has not shown that the documents are material to our determination, and we deny his motions.

*Board*, 979 F.3d 1362 (Fed. Cir. 2020).[4]  In that case, the court held that, when evaluating the Board's jurisdiction in an IRA appeal, "the question of whether the appellant has non-frivolously alleged protected disclosures that contributed to a personnel action must be determined based on whether the employee alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  *Id.* at 1369.  The court explained that "[t]he Board may not deny jurisdiction by crediting the agency's interpretation of the evidence as to whether the alleged disclosures fell within the protected categories or whether the disclosures were a contributing factor to an adverse personnel action."  *Id.* Nevertheless, the court noted that "the Board may also consider sources such as 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'"  *Id.* (quoting *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004))).  Similarly, we may also consider "exhibits attached to the complaint whose authenticity is unquestioned."  Wright & Miller, *supra*, § 1357; *von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139, 1143 (8th Cir. 2019).

¶14        The appellant attached a copy of the settlement agreement to his appeal. IAF, Tab 1 at 8-13.  He relied on it to support his claim that the agreement violated "current and future law," and he does not dispute the authenticity of the agreement.  *Id.* at 5-6.  The appellant also asserted that the agency breached the agreement when it did not remove derogatory information from his personnel file

---

[4] The administrative judge did not have the benefit of the *Hessami* decision, and therefore did not address how that decision might impact the jurisdictional analysis here.  While the Board has historically been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with the Federal Circuit or any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B).  For purposes of this appeal, we have addressed the impact of *Hessami* and cited to other Federal Circuit precedent in support of our determination in this case.

and "blacklist[ed]" him for several positions to which he applied. IAF, Tab 64 at 6-11, Tab 75 at 6, Tab 83 at 29-30, Tab 96 at 11-12. Thus, we find that the settlement agreement is a matter incorporated by reference or integral to the appellant's claim, and that its authenticity is unquestioned.

¶15 Moreover, Federal Rule of Civil Procedure 10(c) provides that a "written instrument" attached to a pleading becomes "a part of that pleading for all purposes."[5] Under this reasoning, when an appellant attaches a written instrument to his appeal, and relies on it to assert his claims, its contents are part of the appeal that the Board may consider in determining its sufficiency. *See Williamson v. Curran*, 714 F.3d 432, 435-36 (7th Cir. 2013) (explaining that "when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint"). "[A]n instrument is a document that defines a party's rights, obligations, entitlements, or liabilities," such as a contract. *Id.* (citation omitted). A settlement agreement is a contract. *Jackson v. Department of the Army*, 123 M.S.P.R. 178, ¶ 6 (2016). Thus, under the guidance provided by Federal Rule of Civil Procedure 10(c) and case law interpreting that rule, we find that the settlement agreement became a part of the appeal and may be considered in determining whether the Board has jurisdiction.

The appellant has not shown that the settlement agreement was fraudulent as a result of coercion or duress.

¶16 The appellant asserts on review that, before he signed the settlement agreement, the agency did not support him as a whistleblower and was "out to

---

[5] Although the Board is not bound by the Federal Rules of Civil Procedure, it may look to them for guidance. *McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 21 (2011), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012). We find that the aforementioned Federal rule is instructive guidance for our disposition of this appeal.

get" him, he had Outstanding performance evaluations before he made his disclosures and received an award for whistleblowing, and other employees feared making disclosures due to the agency's propensity to retaliate. PFR File, Tab 2 at 3-4, 13, 21. He also claims that the agreement was a "Contract of Adhesion" that he was required to sign because the agency had greater bargaining power, and that he signed the agreement when he was "[u]p against the wall and facing continued character assassination." *Id.* at 11, 19, 21-22.

¶17     The Board will consider the settlement agreement, even though it was reached outside of a Board proceeding, to determine its effect on the Board appeal and any waiver of Board appeal rights. *Lee v. U.S. Postal Service*, 111 M.S.P.R. 551, ¶ 4 (2009), *aff'd per curiam*, 367 F. App'x 137 (Fed. Cir. 2010). The appellant may challenge the validity of the settlement agreement if he believes that the agreement was unlawful, involuntary, or resulted from fraud or mutual mistake. *Id.*

¶18     To establish that a settlement agreement was fraudulent as a result of coercion or duress, a party must prove that he involuntarily accepted the other party's terms, that circumstances permitted no alternative, and that such circumstances were the result of the other party's coercive acts. *Hinton v. Department of Veterans Affairs*, 119 M.S.P.R. 129, ¶ 4 (2013). The test as to whether the agreement resulted from coercion is objective, i.e., whether a reasonable person in the appellant's position would have felt coerced. *See Middleton v. Department of Defense*, 185 F.3d 1374, 1377-83 (Fed. Cir. 1999) (concluding that a former Federal employee made nonfrivolous allegations that he signed the settlement agreement, pursuant to which he retired, as a result of agency misinformation and coercion). The party challenging the validity of the settlement agreement bears a heavy burden. *Hinton*, 119 M.S.P.R. 129, ¶ 4. An appellant's mere post-settlement remorse or change of heart cannot serve as a basis for setting aside a valid settlement agreement, *id.*, and the fact that an

appellant faced unpleasant alternatives does not render an agreement involuntary, *Bahrke v. U.S. Postal Service*, 98 M.S.P.R. 513, ¶ 12 (2005).

¶19    The appellant has not made a nonfrivolous allegation that the agency's representative engaged in coercive acts or that the circumstances were such that he had no alternative to accepting the agreement.  To the extent that he is alleging that the agency's actions before entering into the settlement agreement caused him duress, and thereby led to his involuntary acceptance of the agreement, the Board will consider whether the appellant was represented below, whether he has demonstrated that he was mentally impaired at the time, and whether he has otherwise shown that he was unable to understand fully the nature of the action in question or to assist his representative in the appeal.  *Sullivan v. Department of Veterans Affairs*, 79 M.S.P.R. 81, 85 (1998).  The administrative judge found the appellant failed to nonfrivolously allege the agreement was the result of duress. ID at 6.  She observed that the appellant was represented by counsel, who engaged in substantive negotiations for more than 1 month prior to signing the agreement along with the appellant; the appellant did not allege he was mentally impaired; and he acknowledged in the agreement that he understood its provisions and entered into it voluntarily.  ID at 6-8.  We agree.

¶20    The appellant was represented by an attorney during the negotiation and signing of the settlement agreement.  IAF, Tab 2 at 29, Tab 9 at 18-24, Tab 83 at 29, Tab 88 at 4, Tab 99 at 79.  The appellant indicated that his attorney spent "much time negotiating on [his] behalf," IAF, Tab 28 at 7-8, and negotiated changes to the agreement for the appellant, IAF, Tab 92 at 6-8.  The appellant has not alleged that he was unable to fully understand the nature of the settlement agreement or to assist his counsel.  In fact, the agreement specifically provides that the appellant "attests that by entering into this agreement, he has carefully read and fully understands all of its provisions, and that his signature is voluntary."  IAF, Tab 99 at 77.  It also provides that the parties understand the terms of the agreement, freely accept them, and enter into the agreement

voluntarily. *Id.* Given the opportunity the appellant and his attorney had to discuss the negotiations and the settlement agreement, these statements of understanding set forth in the agreement must be taken at face value. *See Gutierrez v. Department of Defense*, 66 M.S.P.R. 403, 409 (1995). Accordingly, the appellant has not made a nonfrivolous allegation that he entered into the agreement involuntarily. *Cf. Short v. U.S. Postal Service*, 66 M.S.P.R. 214, 219-20 (1995) (finding that an employee who submitted an affidavit from a licensed social worker stating that he was incapable of making a rational decision when he signed the settlement agreement, and his own affidavit reflecting that he signed the agreement under time pressure, made a nonfrivolous allegation that the agreement was invalid).

¶21      The appellant further asserts that he did not receive valuable consideration in the settlement agreement for the following reasons:  (1) his employment extension was only for 3 months out of a "12-month minimum extension [he] was entitled to"; (2) the agency did not remove all derogatory information from his personnel file; and (3) the letter of recommendation the agency wrote for him was a "bad faith fraud" because the agency did not believe in the contents of the letter.  PFR File, Tab 2 at 28-29.  We disagree.

¶22      Under the law of contracts, an enforceable contract does not exist unless it is based on a bargained-for exchange, known as "consideration." *Pappas v. Office of Personnel Management*, 76 M.S.P.R. 152, 158 (1997), *aff'd per curiam*, 155 F.3d 565 (Fed. Cir. 1998) (Table).  A very small consideration (the proverbial "peppercorn") can support an enforceable contract; convenience, avoidance of troublesome details and efforts, and forbearance to institute proceedings against the other party, for example, can be proper elements of consideration. *Id.*  As found by the administrative judge, the appellant received valuable consideration in the form of promises by the agency to extend his employment by 3 months even though his appointment was expiring in December 2011, positively amend his employment evaluation records, provide a

letter of recommendation, and remove derogatory information from his personnel file.[6]  ID at 6.  The appellant's assertion of noncompliance by the agency regarding derogatory information in his personnel file after the parties entered into the settlement agreement does not demonstrate a lack of consideration sufficient to invalidate the agreement.  *See Zemco Manufacturing, Inc. v. Navistar International Transportation Corp.*, 270 F.3d 1117, 1121 n.3 (7th Cir. 2001) (explaining the difference between a lack of consideration in the formation of a contract and a breach of a contract).  Moreover, regardless of the letter of recommendation writer's beliefs, the letter still represented a thing of value to the appellant in exchange for other consideration received by the agency.

<u>The appellant has not shown a basis to invalidate the settlement agreement based upon an alleged breach of the agreement by the agency.</u>

¶23        The appellant asserts that the agency did not remove derogatory information from his personnel file as required under the settlement agreement.  PFR File, Tab 2 at 11-12, 28; *see* IAF, Tab 64 at 6-8, Tab 75 at 6, Tab 96 at 18-19, Tab 99 at 75.  He also claimed below that the agency contributed to ongoing "blacklisting" that deprived him of several positions for which he had applied, IAF, Tab 83 at 30, Tab 96 at 12, 19, shared the apology he wrote as part of the agreement with recipients of his emails, IAF, Tab 94 at 15, and informed an online publication with whom he was seeking employment that his criticisms of the CHDS were inaccurate, IAF, Tab 96 at 18.  He appears to assert that these actions violated the agreement's provisions that "[b]oth parties agree not to disparage the other party," and that the settlement agreement's terms would be kept confidential with certain enumerated exceptions.  *Id.*; *see* IAF, Tab 99 at 76.

¶24        The administrative judge did not address the appellant's arguments regarding breach.  ID at 11 n.2.  We find we must do so here.  An appellant may

---

[6] To the extent that the appellant is arguing that the 3-month extension of his appointment was unlawful, we have separately explained below why we need not address the legality of any provision of the settlement agreement.

show that a waiver of appeal rights in a settlement agreement is unenforceable by showing that he complied with the agreement, but the agency breached it. *Ringo v. Department of Defense*, 122 M.S.P.R. 91, ¶ 8 (2015); *Siman v. Department of the Air Force*, 80 M.S.P.R. 306, ¶ 10 (1998). Under the terms described below, however, we do not reach the issue of breach.

¶25    The agreement provided that, "in the event that the Employee believes that the agency has failed to comply with the terms of this agreement, the procedures set forth at 29 C.F.R. Section 1614.504 shall govern." IAF, Tab 99 at 77. In this regard, the agreement also provided that the appellant "shall notify the agency's EEO Director, in writing, of the alleged noncompliance." *Id.* at 77-78. If the appellant was not satisfied with the agency's attempt to resolve the matter or the agency had not responded to the appellant's request, he was entitled to appeal to the EEOC "for a determination as to whether the agency has complied with the terms of the settlement agreement or final decision." *Id.* at 78. The agreement did not provide for a remedy before the Board in the event of a breach.

¶26    The language of 29 C.F.R. § 1614.504 essentially mirrors this provision. The Board has dismissed a petition to enforce a settlement agreement when it identified 29 C.F.R. § 1614.504 as the exclusive process for seeking enforcement or review from an alleged breach of an agreement. *See Fuentes v. Department of Health & Human Services*, 111 M.S.P.R. 246, ¶¶ 3-4 (2009) (dismissing a petition to enforce a settlement agreement that included a provision that any enforcement action be resolved under the procedures at 29 C.F.R. § 1614.504); *Grubb v. Department of the Interior*, 76 M.S.P.R. 639, 642-43 (1997) (concluding that the parties did not intend to have the Board enforce a settlement agreement when the agreement provided that the appellant's remedy for any agency noncompliance was pursuant to the procedures at 29 C.F.R. § 1614.504). When reviewing a contract dispute, the Board must ensure that the parties receive that for which they bargained. *See Walker-King v. Department of Veterans Affairs*, 119 M.S.P.R. 414, ¶ 10 (2013). Because the agreement shows that the parties did

not intend to have the Board determine whether the agency breached the agreement, we will not make a determination on that issue.

<u>There is no basis to invalidate the settlement agreement based upon a finding that some of its provisions are unlawful.</u>

¶27    The settlement agreement provides, in relevant part, that the appellant agrees to cease and desist any and all negative public discussion of CHDS and past and current CHDS personnel.  IAF, Tab 99 at 75.  The appellant asserts that this provision improperly prohibits him from making disclosures to OSC, the Board, OIG, and Congress, and violates the Lloyd-LaFollette Act of 1912, ch. 389, § 6, 37 Stat. 539, 555, which specified that the right of civil servants to furnish information to Congress "shall not be denied or interfered with," PFR File, Tab 2 at 23; *see* 5 U.S.C. § 7211 (containing the same prohibition); *Bush v. Lucas*, 462 U.S. 367, 382-83 (1983) (discussing the language and purpose of this provision of the Lloyd-LaFollette Act of 1912).

¶28    The administrative judge did not specifically address this argument, although the appellant raised it below.  IAF, Tab 34 at 14-15.  However, she considered a similar argument by the appellant, that the agreement violated the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, § 104(a)-(b), 126 Stat. 1465, 1467-68 (codified in relevant part at 5 U.S.C. § 2302(a)(2)(A)(xi), (b)(13) & note), which added "enforcement of a nondisclosure . . . agreement" to the list of personnel actions and prohibited personnel practices.  ID at 8-9.  She held that, even if the appellant correctly asserted that this provision was unlawful because it prohibited him from continuing to make whistleblower disclosures, the appellant's waiver of Board appeal rights remained valid because the agreement also provided that the remainder of the agreement would be enforced as if any illegal portion had not been a part thereof.[7]  ID at 8-9.  We agree.

---

[7]  The appellant has not re-raised this argument regarding enforcement of a nondisclosure agreement on review.  Further, he has not alleged that the agency sought

¶29    The Board generally will consider the alleged unlawfulness of a settlement agreement entered into in another forum to the extent it renders an appellant's waiver of appeal rights unenforceable before the Board.  *See Lee*, 111 M.S.P.R. 551, ¶ 4 & n.2 (acknowledging that the Board has no authority to invalidate a settlement agreement entered into in another forum, but that it may consider the agreement to determine its effect on the Board appeal and any waiver of appeal rights).  However, here we need not decide whether this or any other provision in the agreement is unlawful under the circumstances of this appeal.  The settlement agreement provides that, "if determined by a court of competent jurisdiction, this agreement contains an illegal provision, then the illegal portion of the agreement will be disregarded, and the balance of the agreement enforced as if the illegal portion had not been part of the agreement."[8]  IAF, Tab 99 at 76.

¶30    We consider "the language" of a settlement agreement and "the intent of the parties in determining whether the [agreement] is divisible."  *See American Savings Bank, F.A. v. United States*, 519 F.3d 1316, 1325 (Fed. Cir. 2008); *see also* 15 Williston on Contracts § 45:6 (4th ed. May 2021) ("[t]he parties' intent to enter into a divisible contract may be expressed in the contract directly, through a so-called 'severability clause.'").  "In this connection, the intent of the parties as revealed by the express contract terms or language is generally held to

---

to enforce the provision of the agreement prohibiting "negative public discussion," and thus we need not address here whether such a claim might be the basis for an IRA appeal under the WPEA notwithstanding the "cease and desist" provision of the agreement.  IAF, Tab 99 at 75-76.  In fact, the appellant asserted below that he continued to make disclosures after signing the agreement.  IAF, Tab 35 at 18-19.

[8] Although the Board is not a "court," it is an independent administrative establishment within the Executive Branch that exercises independent quasi judicial functions. *Morgan v. U.S. Postal Service*, 48 M.S.P.R. 607, 610 (1991).  It is also a forum with jurisdiction over certain IRA appeals like this one.  5 U.S.C. § 1221(a).  The agreement specifically mentions the Board and the EEOC, IAF, Tab 99 at 75, and the Board is performing the role of a "court" in this setting.  Under these circumstances, and reading the agreement as a whole, we find that the Board has the authority to determine whether a provision of the agreement is illegal or unlawful.  *See Hinton*, 119 M.S.P.R. 129, ¶ 4.

be the determinative factor in deciding whether a contract is divisible," and "[a]n express provision that the contract shall be divisible . . . will generally be given considerable weight." Williston, *supra*, § 45:5; *see Martin v. Department of Justice*, 99 M.S.P.R. 59, ¶ 20 (2005) (stating that it is well settled that in construing the terms of a written settlement agreement the centerpiece of the Board's analysis is the plain language of the agreement), *aff'd per curiam*, 188 F. App'x 994 (Fed. Cir. 2006). Here, the express language of the agreement provides that the "balance of the agreement," which we find includes any enforceable waiver of Board appeal rights, would remain in effect even if another provision of the agreement was found to be illegal. Therefore, the appellant's contention that the agreement includes an illegal provision relating to the making of protected disclosures, even if true, does not provide a basis for invalidating the agreement or its waiver provision.

There is no basis to invalidate the settlement agreement based upon a finding that some of its provisions may violate public policy.

¶31    In construing the terms of a settlement agreement, a reviewing court may inquire into and decide the issue of whether the agreement is contrary to public policy, even if that issue has not been briefed by the parties. *See Fomby-Denson v. Department of the Army*, 247 F.3d 1366, 1373 (Fed. Cir. 2001). Here, although not raised by the parties either below or on review, and not discussed in the initial decision, we address the issue of whether its provisions contravene public policy.

¶32    In *Fomby-Denson*, the appellant entered into a settlement agreement with her former employing agency during the adjudication of her removal before the Board. *Id.* at 1369. The agreement provided, as relevant here, that it "'constitute[d] a full, complete, and final settlement of all differences and controversies,'" the appellant's official personnel file would be purged of all records relating to her removal, and the terms of the agreement would not be "'publicized or divulged . . . , except as reasonably necessary to administer its terms.'" *Id.* (quoting the agreement). After the agency referred some of the

conduct underlying the appellant's removal and revealed some of the terms of the agreement to local law enforcement authorities for investigation and possible prosecution, the appellant petitioned for enforcement of the agreement. *Id.* at 1369-71. She asserted that the criminal referral breached the agreement. *Id.* at 1371-72. Alternatively, she sought to rescind the settlement agreement based on the alleged breach and reinstate her Board appeal of her removal. *Id.* at 1372.

¶33    An administrative judge denied the appellant's petition for enforcement, the Board denied her petition for review of that initial decision, and the appellant appealed the Board's final decision to the Federal Circuit. *Id.* at 1371. The court noted the well-settled doctrine that contracts that violate public policy are unenforceable, and that the appellant's interpretation of the agreement would contravene public policy because it would bar a party from reporting possible crimes of another party to law enforcement authorities. *Id.* at 1373-78. The court did not rescind the agreement, however, but found that the agreement would be construed to permit the agency to make such criminal referrals. *Id.* at 1368, 1378.

¶34    The court reached a similar result in *Kavanagh v. Department of Health & Human Services*, 414 F. App'x 269 (Fed. Cir. 2010).[9] There, in a settlement agreement of an IRA appeal, the appellant agreed that any claim stemming from his employment was resolved by the agreement. *Id.* at 270. The agreement also included confidentiality provisions. *Id.* After the administrative judge dismissed the case as settled, the appellant filed a petition for review asserting that the agreement was unlawful. *Id.* He claimed, in pertinent part, that the agreement prevented him from reporting fraud and other crimes against the United States. *Id.* The Board denied the petition for review, and the court affirmed. *Id.* at 269-70.

---

[9] The Board may rely on unpublished decisions of the Federal Circuit if it finds the court's reasoning persuasive, as we do here. *See Jennings v. Social Security Administration*, 123 M.S.P.R. 577, ¶ 25 n.2 (2016).

¶35    The court rejected the appellant's contention that the agreement was unlawful because it prohibited him from reporting crimes to appropriate officials and entities. *Id.* at 271. To avoid any public policy concerns such a prohibition would raise, it read the agreement as permitting such disclosures. *Id.* The court reasoned that "[a] potentially ambiguous provision . . . does not automatically render the entire agreement unlawful and does not require rescission of the entire agreement." *Id.* It therefore affirmed the dismissal of the case as settled. *Id*. at 271-72.

¶36    The appellant construes the agreement as preventing him from making certain whistleblower disclosures.[10] PFR File, Tab 2 at 23. Even assuming that this construction is correct and that it is against public policy, we find that the proper remedy in such a situation would not be to invalidate the agreement, but instead to interpret any offending provisions in a way that they would not violate public policy, consistent with the reasoning set forth in *Fomby-Denson* and *Kavanagh*. Thus, we find no basis to invalidate the settlement agreement based on a determination that any of its provisions violated a public policy.

The settlement agreement's waiver provision covers alleged personnel actions occurring during the appellant's employment.

¶37    Having found that there is no basis for invalidating the settlement agreement, we turn to the scope and applicability of the waiver of appeal rights in the agreement. *See Rhett v. U.S. Postal Service*, 113 M.S.P.R. 178, ¶ 17 (2010). The agreement provides, in relevant part, that in exchange for the promises made by the agency, the appellant "agrees not to institute a law suit under . . . the Whistleblower Protection Act." IAF, Tab 99 at 74. It also provides that the appellant "[w]aives, releases, and forever discharges the Agency . . . from any

---

[10] This contention is inconsistent with the views of his former attorney, who opined that the settlement agreement did not prohibit the appellant from making protected disclosures, and that the agency's counsel was aware of this understanding from the attorney's briefing to him during the settlement negotiations. IAF, Tab 83 at 29.

claims, complaints, demands, causes for actions, and damages arising out of his employment with the Agency." *Id.* at 75. The agreement states that the appellant "agrees not to file any new complaints, claims, grievances, proceedings, appeals, or lawsuits in any judicial or administrative forum whatsoever (including the Merit Systems Protection Board . . .) against the Agency . . . arising out of his employment with the Agency, and all related matters." *Id.* Finally, the settlement agreement provides that "no future claims or complaints of any kind arising out of Employee's past employment with the Agency will be pursued by Employee . . . except for the purposes of enforcing this agreement." *Id.*

¶38      As found by the administrative judge, the appellant has challenged in this IRA appeal personnel actions that occurred before he entered into the settlement agreement, during the 3-month extension of his appointment after he entered into the agreement, and after his separation from the agency. ID at 5-11; *see* IAF, Tab 35 at 6-27. We first agree with the administrative judge that the agreement precludes him from challenging personnel actions that occurred before he entered into the agreement. This includes his claims that his supervisors extended his initial 3-year appointment by only 2 years and 1 year, respectively, publicly and privately mocked him and threatened him with adverse actions, asked him to leave senior staff meetings, told him that his appointment would not be renewed, revoked his access to NDU facilities and blocked him from sending emails using his agency account, changed his duties, downgraded his performance evaluation, attempted to initiate an ethics inquiry against him, and required him to sign the agreement. IAF, Tab 35 at 6-10, 12, 14-17. The agreement precludes the appellant from filing claims or complaints of any kind "arising out of [his] past employment with the Agency." IAF, Tab 99 at 75. Thus, he is precluded from challenging the actions listed above. *See Vogel v. Department of the Navy*, 106 M.S.P.R. 451, ¶¶ 5, 8 (2007).

¶39      The administrative judge did not address the application of the agreement to incidents occurring after it was executed but before the appellant's employment

ended due to the expiration of his final 3-month appointment. We find that the agreement precludes him from challenging personnel actions that occurred during this period. The agreement specifically precludes the appellant from filing an appeal with the Board "arising out of his employment with the Agency." IAF, Tab 99 at 75. The agreement contemplated that the appellant's "employment" would last until March 31, 2012. *Id.* at 74. "[C]"ontract provisions must be read as part of an organic whole, according reasonable meaning to all of the contract terms." *Lockheed Martin IR Imaging Systems, Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997). "Such an interpretation must assure that no contract provision is made inconsistent, superfluous, or redundant." *Id.* Here, the agreement references both the appellant's "employment" and his "past employment." Giving effect to both of these terms, we find that the appellant's contention that the agency initiated a sham investigation of his allegations of wrongdoing after the agreement was signed, but before his employment with the agency ended, IAF, Tab 35 at 18-20, is similarly precluded by the settlement agreement waiver.

¶40        Even assuming, however, that the waiver of Board appeal rights did not cover such alleged personnel actions, we agree with the administrative judge that the appellant did not nonfrivolously allege that an investigation that the agency undertook during this period was a personnel action. ID at 10. While a retaliatory investigation may be a basis to grant additional corrective action if raised in connection with a covered personnel action, it is not itself a covered personnel action that may serve as the basis for an IRA appeal. *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 953-55 (Fed. Cir. 2020). Here, the appellant did not allege that he was the subject of the investigation such that disciplinary action could result (i.e., the investigation did not concern wrongdoing on the part of the appellant) or that the investigation resulted in a covered personnel action. Accordingly, he fails to meet his burden on this claim.

<u>The Board lacks jurisdiction over alleged personnel actions arising after the appellant's employment ended.</u>

¶41    The appellant contends that, after his employment with the agency ended, the agency "tr[ied] to kill my chances of employment outside CHDS." IAF, Tab 35 at 21.  It does not appear that the waiver language in the settlement agreement precludes the appellant from challenging in an IRA appeal personnel actions that occurred after his employment with the agency ended.  Although an appealable personnel action includes a nonselection, *see King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 10 (2011), we agree with the administrative judge that the appellant did not nonfrivolously allege that his disclosures were a contributing factor in any nonselections because he did not, among other things, identify any positions for which he applied and was not selected, ID at 11; *see Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 12 (2015) (holding that vague, conclusory, and unsupported allegations do not satisfy the Board's nonfrivolous pleading standard).

¶42    The appellant also asserted that, after his employment with the agency ended, it continued to ban him from the NDU campus, impeded his ability to communicate with former colleagues using their agency email addresses, kept his academic work off the agency's website, did not permit him to attend NDU events, threatened him with a lawsuit, and accused him of violating the settlement agreement, and that the NDU Director made "offensive physical contact" with him at a seminar.  IAF, Tab 35 at 22-27.  The administrative judge did not specifically address these allegations, and therefore we do so in the first instance here.  ID at 10-11; *see Parrish v. Merit Systems Protection Board*, 485 F.3d 1359, 1362 (Fed. Cir. 2007) (finding that the Board is obligated "to determine its own jurisdiction over a particular appeal").

¶43    A "significant change in duties, responsibilities, or working conditions . . . with respect to an employee in . . . a covered position in an agency," is an appealable personnel action.  5 U.S.C. § 2302(a)(2)(A)(xii).  However, the above

allegations all relate to actions that allegedly occurred after his employment with the agency ended. A former employee's appeal rights are limited to actions taken while they were in the status of being an employee or an applicant for employment. *Weed v. Social Security Administration*, 113 M.S.P.R. 221, ¶ 11 (2010); *Pasley v. Department of the Treasury*, 109 M.S.P.R. 105, ¶ 10 (2008). These actions do not, therefore, support a finding of a nonfrivolous allegation of a personnel action taken against an "employee" in a covered position in an agency.[11]

¶44    Accordingly, we find that the appellant has not made a nonfrivolous allegation of jurisdiction regarding any alleged personnel actions that are not covered by the waiver of Board appeal rights in the parties' settlement agreement.

The appellant's other arguments do not warrant a different outcome in this case.

¶45    The appellant contends that the administrative judge failed to rule on his implicit motions to strike opposing counsel for making repeated false statements, and improperly relied on those false statements on pages 4-5 of the initial decision in finding that the Board lacked jurisdiction over the appeal. PFR File, Tab 2 at 3, 6-10, 14, 24. He also claims that the administrative judge did not respond to his complaints about a pleading filed by the agency that purportedly contained derogatory information about him, supported his claim of false statements made by the agency's counsel, and later "disappeared" from the Board's electronic case file. *Id.* at 8-9, 11-12, 14; *see* IAF, Tabs 74, 76.

---

[11] Given this finding, we need not address the disclosures the appellant alleges were contributing factors in the actions taken after his employment ended. Even if we were to address these disclosures, however, they would not appear to be protected because the appellant alleges that they were made after his employment with the agency ended. IAF, Tab 35 at 20-27; *see* 5 U.S.C. § 2302(b)(8)(A) (prohibiting reprisal because of any disclosure of information "by an employee or applicant"); *Amarille v. Office of Personnel Management*, 28 F. App'x 931, 932-33 (Fed. Cir. 2001) (agreeing with the Board that it lacked jurisdiction over an IRA appeal brought by a former Federal employee concerning the denial of a retirement annuity, reasoning that he was neither an employee nor an applicant at the time of the agency actions at issue).

¶46   The administrative judge addressed the claim regarding false statements, finding that they were not within the Board's limited jurisdiction conferred by statute. ID at 11 n.2. The Board's regulations provide that an administrative judge may impose sanctions upon the parties as necessary to serve the ends of justice. 5 C.F.R. § 1201.43. An administrative judge may exclude or limit the participation of a representative for contumacious conduct or conduct prejudicial to the administration of justice. 5 C.F.R. § 1201.43(d). The appellant has not clearly identified on review the nature of the alleged false statements. He appears to assert that the agency's counsel falsely stated that the appellant's strategic communications services were no longer needed and that all derogatory information was removed from his personnel file consistent with the settlement agreement. PFR File, Tab 2 at 28. The appellant has not proven that these statements were false, nor has he shown that the agency's representative otherwise engaged in contumacious conduct or conduct prejudicial to the administration of justice. The appellant has shown no basis, therefore, for the administrative judge to have sanctioned the agency's representative.

¶47   The appellant identifies pages 4 and 5 of the initial decision in alleging that the administrative judge relied upon false statements made by the agency's counsel in her jurisdictional ruling. As set forth above, when evaluating the Board's jurisdiction in an IRA appeal, the question of whether the appellant has nonfrivolously alleged protected disclosures that contributed to a personnel action must be based on whether the employee alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Hessami*, 979 F.3d at 1369. Aside from stating that the agency filed a motion to dismiss the appeal for lack of jurisdiction and responded to her jurisdictional order, ID at 4-5, there is no indication that the administrative judge relied upon any statements by the agency's counsel in making her jurisdictional determination, *see* ID at 6-11. A representative's statement in a pleading, in any event, is not evidence.

*Rose v. Department of Defense*, 118 M.S.P.R. 302, ¶ 10 (2012). Accordingly, the appellant has shown no error in this regard by the administrative judge.

¶48    Finally, the appellant contends that an agency pleading entitled, "Agency Response to Appellant Initial Discovery Response," was removed from the electronic case file. IAF, Tabs 74, 76. The Board's regulations do not require parties to file their responses to discovery requests with the Board. 5 C.F.R. § 1201.73(b); *see Robinson v. Department of Veterans Affairs*, 94 M.S.P.R. 509, ¶ 13 n.2 (2003) (citing a prior version of 5 C.F.R. § 1201.73(c) for this principle). In addition, the acknowledgment order in this case informed the parties that, "[u]nless you are filing a motion to compel, you must not submit your discovery requests and responses to the Board." IAF, Tab 4 at 3. It further provided that, "[i]f you do, they will be rejected and returned to you." *Id.* Under these circumstances, the appellant has shown no error or abuse of discretion in the apparent removal from the electronic case file of a document that should not have been filed with the Board.

¶49    Accordingly, we deny the appellant's petition for review and affirm the initial decision as modified by this Nonprecedential Final Order.

## NOTICE OF APPEAL RIGHTS[12]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and

---

[12] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under <u>5 U.S.C. § 2302</u>(b)(8) or other protected activities listed in <u>5 U.S.C. § 2302</u>(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[13]  The court of appeals must <u>receive</u> your

---

[13] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board
Washington, D.C.