NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT JOHN MCCARTHY,**
*Petitioner,*

v.

**INTERNATIONAL BOUNDARY AND WATER COMMISSION:
U.S. AND MEXICO,**
*Respondent.*

---

2011-3239

---

Petition for review of the Merit Systems Protection Board in consolidated case nos. DA1221090725-W-1 and DA1221100078-W-1.

---

Decided: October 15, 2012

---

PAULA DINERSTEIN, Public Employees for Environmental Responsibility, of Washington, DC, argued for petitioner.

MICHAEL P. GOODMAN, Trial Attorney, Civil Division, United States Department of Justice, of Washington, DC,

argued for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director.

———————————

Before BRYSON, PROST, and O'MALLEY, *Circuit Judges*.

PROST, *Circuit Judge*.

Robert McCarthy, who was formerly employed as a supervisory attorney for the United States International Boundary and Water Commission (the "Commission" or the "USIBWC"), appeals from an order of the Merit Systems Protection Board ("Board") holding that the Commission did not violate the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8), when it removed Mr. McCarthy. For the reasons discussed below, this court *affirms*.

## I. BACKGROUND

### A

USIBWC Commissioner Bill Ruth hired Mr. McCarthy to serve in the excepted service as a permanent, full-time, supervisory attorney for the Commission beginning January 18, 2009. Shortly after Mr. McCarthy began working at the Commission, he wrote a series of memoranda, which he sent to the Commission's executive staff. First, in May 2009, Mr. McCarthy circulated a memorandum stating his opinion that Commissioner Ruth's appointment was unconstitutional and invalid. On June 19, 2009, Mr. McCarthy circulated a second memorandum, which recommended information technology qualifications for a Chief Information Officer. The second memorandum further asserted that the Chief Administra-

tive Officer, Diana Forti, was a "mid-level administrator who does not possess these core competencies." A third memorandum also dated June 19, 2009, accused the Commission of "gross mismanagement" by failing to adopt the recommendations of the State Department's Office of Inspector General ("OIG") regarding the separation of oversight responsibility for budget and contracts.

While Commissioner Ruth did not review or approve the memoranda, Mr. McCarthy claims that he wrote them pursuant to his role on a "reorganization committee" organized by Commissioner Ruth. Al Riera, the Commission's principal engineer and former acting commissioner, claims that he read and approved Mr. McCarthy's memoranda before they were distributed to the alleged reorganization committee and to Commissioner Ruth. But in any event, Commissioner Ruth was upset by these memoranda, which he perceived as divisive, as attacking other members of the executive staff, and causing "a lot of resentment" amongst the staff. *McCarthy v. Int'l Boundary & Water Comm'n*, No. DA1221090735-W-1, slip op. at 14 (M.S.P.B. Apr. 9, 2010) ("*Initial Decision*"). According to Commissioner Ruth, the Commission had become divided into two "camps," one aligned with Mr. McCarthy and the other viewed by Mr. McCarthy as his antagonists. *Id.* at 15. Commissioner Ruth became concerned about the quality of Mr. McCarthy's legal advice, a concern he first revealed to Mary Brandt, the Special Assistant to the Commissioner, in May, 2009. *Id.* at 9.

At a late June 2009 meeting in Washington D.C., Commissioner Ruth told Ms. Brandt that he did not believe that Mr. McCarthy was "a team player," that he regretted hiring Mr. McCarthy, and that he was considering terminating Mr. McCarthy's employment. *Id.* at 10. Ms. Brandt related to Commissioner Ruth that she also

perceived Mr. McCarthy's memoranda as mean-spirited, and in particular, that his memorandum regarding the separation of budgeting and contracting functions appeared to misinterpret the OIG's recommendations. *Id.* According to Ms. Brandt, Commissioner Ruth asked her to provide him with legal contacts at the State Department who could assist him in removing Mr. McCarthy. *Id.* at 11. Commissioner Ruth claims, and computer meta-data confirms, that he actually began drafting Mr. McCarthy's termination letter on July 18, 2009. *Id.* at 19, 22.

On or around July 20, 2009, Commissioner Ruth told Kevin Petz, the Commission's Human Resources Director, that he was considering firing Mr. McCarthy. *Id.* at 8. Commissioner Ruth then directed Mr. Petz to research the appropriate removal procedure. *Id.* After speaking with Commissioner Ruth and then Mr. Riera regarding the situation, Mr. Petz spoke directly with Mr. McCarthy. In that conversation, Mr. Petz related to Mr. McCarthy that Commissioner Ruth was upset with him and counseled Mr. McCarthy to improve his relationship with Commissioner Ruth. *Id.* Mr. Petz later asked Mr. McCarthy, through a hypothetical question, how Commissioner Ruth could fire an attorney. *Id.* at 8-9. Mr. McCarthy then provided a memorandum suggesting that an attorney in his position was entitled to "due process" protection, which Mr. Petz in turn provided to Commissioner Ruth. *Id.* at 9.

The Commission's July 27, 2009 staff meeting was "tense." *Id.* at 11. According to Ms. Brandt, Mr. McCarthy raised accusations that he had been excluded from certain meetings of a "committee." *Id.* In response, Commissioner Ruth continued to assert that no committee existed, but rather, he had simply assigned tasks on

an individual basis. *Id.* at 17. Commissioner Ruth claims that it was at this staff meeting that he made the firm decision to terminate Mr. McCarthy's employment. *Id.* at 18.

On July 28, 2009, the day after the staff meeting, Mr. McCarthy submitted a memorandum entitled "Disclosures of Fraud, Waste and Abuse" to the State Department's OIG, the Office of Special Counsel ("OSC"), the Government Accountability Office, the Federal Bureau of Investigation, and the White House. That same day, Mr. McCarthy also sent an email to Commissioner Ruth explaining that he had "report[ed] allegations of fraud, waste, and abuse (and suspected criminal activity)" and that he was now "assert[ing] [his] rights as a protected whistleblower." J.A. 2000.

It was not until his trip to Washington D.C. on July 29, 2009, that Commissioner Ruth actually met with personnel from the State Department to discuss removing Mr. McCarthy. *Initial Decision*, slip op. at 18. Rich Visik, a lawyer with the State Department's labor and personnel division, advised Commissioner Ruth that he could terminate Mr. McCarthy with a letter. *Id.* Additionally, Mr. Visik explained that Mr. McCarthy would not be entitled to appeal the termination because he had less than one year of service. Admittedly in anticipation of his possible termination, Mr. McCarthy delivered a memorandum to Commissioner Ruth regarding the "Employment Rights of Federal Attorneys and Whistleblowers" on July 30, 2009. *Id.* at 20. Commissioner Ruth handed Mr. McCarthy a removal letter the following day. Based on the advice of Mr. Visik and other State Department personnel, Commissioner Ruth's letter was brief and to the point, explaining that Commissioner Ruth was removing Mr. McCarthy for "failure to support [Commissioner Ruth] or

other members of the executive staff in a constructive and collegial manner." *Id.* at 19.

B

Mr. McCarthy filed a complaint with OSC on August 1, 2009, wherein he alleged that he was removed for whistleblowing.  He also filed a second complaint in which he claimed that the Commission terminated his federal employee health benefits and failed to reimburse his moving expenses in retaliation for whistleblowing.  After reviewing his complaints, OSC informed Mr. McCarthy that because the Commission had initiated the termination process before his protected activities, they could not infer that his termination was retaliatory.  Mr. McCarthy then filed two Individual Rights of Action ("IRAs") with the Board pursuant to the WPA.  Both cases were assigned to the same administrative judge, who elected to join the cases for hearing purposes only.  The administrative judge found that Mr. McCarthy was not an "employee" within the meaning of 5 U.S.C. § 7511.  *Id.* at 2.  Accordingly, the administrative judge considered only whether Mr. McCarthy was terminated in reprisal for whistleblowing.

In an initial decision dated April 9, 2010, the administrative judge concluded that Mr. McCarthy was not terminated for retaliatory reasons.  *Id.* at 23.  For the sake of efficiency, the administrative judge assumed that Mr. McCarthy had made protected disclosures that, as a prima facie matter, contributed to his removal.  *Id.* at 7.  Operating under that assumption, the administrative judge next considered whether the Commission would have removed him regardless of his protected disclosures.  The administrative judge noted that computer meta-data confirmed Commissioner Ruth's testimony that he began

drafting Mr. McCarthy's termination notice on July 18, 2009. *Id.* at 22. Additionally, the administrative judge noted that Commissioner Ruth "testified in a straight-forward manner, without equivocation," and found his testimony to therefore be "plausible and credible." *Id.* at 21. "Based on his demeanor and the documentary cor-roboration of events prior to [the July 27, 2009] staff meeting," the administrative judge "credit[ed] [Commis-sioner] Ruth's testimony that it was [Mr. McCarthy's] behavior during that meeting that ultimately fixed his determination to terminate [Mr. McCarthy]." *Id.* at 22.

In a separate decision, the administrative judge also determined that Mr. McCarthy had "failed to present any evidence that his disclosures were a contributing factor in the [Commission's] decision (if such a decision were consciously made) to terminate his [federal employee health benefits] coverage or to refuse to reimburse his moving expenses." *McCarthy v. Int'l Boundary & Water Comm'n*, No. DA1221100078-W-1, slip op. at 6 (M.S.P.B. Feb. 22, 2010). The administrative judge relied on the fact that Mr. McCarthy had "failed to identify the [Com-mission] official responsible for making those decisions." *Id.*

Mr. McCarthy appealed both decisions to the full Board. Relevant to the appeal before us, Mr. McCarthy alleged that the administrative judge erred by not joining the two separate appeals and by denying the IRA related to his federal employee health benefits and moving ex-penses simply because Mr. McCarthy had failed to iden-tify the official responsible for taking those actions. Mr. McCarthy further alleged that the administrative judge erred by not considering his due process argument and by denying his various motions related to discovery, includ-ing motions for sanctions and to compel production of

evidence. Additionally, Mr. McCarthy argued that the administrative judge erred in refusing to exclude some evidence from the hearing while admitting other evidence.

In its final decision, the Board addressed each of Mr. McCarthy's contentions. First, the Board agreed with Mr. McCarthy that the administrative judge should have fully joined the appeals. *McCarthy v. Int'l Boundary & Water Comm'n*, 116 M.S.P.R. 594, 602-03 (2011). The Board also agreed that the administrative judge should not have denied Mr. McCarthy's IRA related to federal employee health benefits and moving expenses solely because he had failed to identify the officials responsible. *Id.* at 603. With respect the Mr. McCarthy's discovery and evidentiary disputes, however, the Board found that the administrative judge had not abused his discretion. *Id.* at 604-10. The Board also agreed with the administrative judge's conclusion that Mr. McCarthy's constitutional arguments were not properly before the Board. *Id.* at 610-11.

Turning to the whistleblowing claim, the Board found that Mr. McCarthy had made at least one protected disclosure that, as prima facie matter, contributed to his removal. The Board then considered whether the Commission had nonetheless demonstrated, by clear and convincing evidence, that it would have removed Mr. McCarthy even absent his disclosures. Relying in part on the administrative judge's demeanor-based determination that Commissioner Ruth was a credible witness, the Board found ample evidence that Commissioner Ruth's decision to remove Mr. McCarthy predated the disclosures. *Id.* at 623-24. Next, the Board found that Commissioner Ruth had only a slight motive to retaliate because when he hired Mr. McCarthy, he was aware that Mr. McCarthy had previously filed whistleblower disclo-

sures regarding the Department of the Interior. *Id.* at 625. In other words, he decided to hire Mr. McCarthy knowing his history as a whistleblower. Moreover, the Board found that there was no evidence that Commissioner Ruth actually read Mr. McCarthy's disclosures before he fired Mr. McCarthy. *Id.* On the other hand, the Board also found that the record contains no evidence that the Commission takes similar actions against similarly situated employees who are not whistleblowers. *Id.* at 626. Assessing all of these factors together, the Board concluded that the Commission demonstrated by clear and convincing evidence that it would have terminated Mr. McCarthy notwithstanding his whistleblowing.

Mr. McCarthy now seeks review in this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

This court's review of decisions by the Board in whistleblower and other cases is limited. We will only overturn a decision of the Board if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Accordingly, we "must reverse a decision of the Board if [it] . . . is not in accordance with the requirements of the Due Process Clause of the Fifth Amendment or any other constitutional provision." *Blank v. Dep't of the Army,* 247 F.3d 1225, 1228 (Fed. Cir. 2001) (citing *Khan v. United States*, 201 F.3d 1375, 1382 (Fed. Cir. 2000)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

We review evidentiary and discovery rulings by an administrative judge for abuse of discretion and will reverse only if the petitioner can "prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1379 (Fed. Cir. 1988).

A

Mr. McCarthy's first argument is that the Commission violated his Fifth Amendment right to procedural due process when it terminated his employment without notice or an opportunity to respond.

We have recognized that "[i]f the government gives a public employee assurances of continued employment or conditions dismissal only for specific reasons, the public employee has a property interest in continued employment." *Stone v. FDIC*, 179 F.3d 1368, 1374 (Fed. Cir. 1999). "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source [such as a statute] . . . .'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). For example, an individual whom Congress has defined as "[a] federal employee, as defined in 5 U.S.C. § 7501 (1994), 'has a property right in [her] continued employment.'" *Delong v. Dep't of Health & Human Servs.*, 264 F.3d 1334, 1341 (Fed. Cir. 2001) (quoting *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996)). "That property right entitles the employee to procedural due process protections under the Fifth Amendment." *Id.* (citation omitted). "On the other hand, if the public employee is hired for a limited appointment or is at will, then the employee does not have a

property interest in continued employment."  *Stone*, 179 F.3d at 1375.

To qualify as an "employee" in the excepted service under Chapter 75, and thereby gain due process protections in one's federal employment, a non-preference-eligible individual not serving in an appointment pending conversion to the competitive service must have "completed 2 years of current continuous service in the same or similar positions . . . under *other than a temporary appointment* limited to 2 years or less."  5 U.S.C. § 7511(a)(1)(C) (emphasis added).

There is no dispute that Mr. McCarthy was a member of the excepted service and served in his position at the Commission for less than two years.  And while Mr. McCarthy admits that he does not qualify as an employee under Chapter 75, he asserts that Chapter 75 is not the only source of property rights in federal employment. Rather, Mr. McCarthy contends that a property right in employment may be found when, "though not secured by a formal contractual tenure provision, [i]t was secured by a no less binding understanding fostered by the [Commission]."  *Perry v. Sindermann*, 408 U.S. 593, 599 (1972). Mr. McCarthy notes that his corrected[1] SF-50 describes him as a permanent, non-probationary, excepted service employee.  Based solely on his designation as "permanent," Mr. McCarthy argues that he is entitled to due process protections.

---

[1] An incorrect SF-50 surfaced following Mr. McCarthy's removal, which mistakenly changed his recorded status to "probationary" and "at will."  This unexplained error was corrected by Mr. Petz on August 8, 2009—before the effective date of Mr. McCarthy's removal—to specify Mr. McCarthy's non-probationary, permanent status, and to remove the "at will" reference.

Mr. McCarthy's argument misinterprets the statutory framework behind the civil service system. More precisely, Mr. McCarthy seeks to bypass 5 U.S.C. § 7511(a)(1)(C) and create a property interest in employment for all members of the excepted service working under permanent appointments, regardless of the length of their service (i.e., regardless of whether they are "employees" under the statute). But it is not enough that McCarthy's SF-50 says "permanent"—§ 7511(a)(1)(C)(ii) still requires two years of concurrent or continuous service before he can become an "employee" as defined by Chapter 75. This requirement is entirely consistent with Mr. McCarthy's permanent appointment. Indeed, "[b]y the plain terms of § 7511(a)(1)(C)(ii), the two years of current continuous service must be served 'under other than a temporary appointment,' i.e., *under a permanent appointment*." *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 411 (Fed. Cir. 1995) (emphasis added). That is to say, Congress has expressly conditioned the Chapter 75 protections afforded to members of the excepted service, including those serving under permanent appointments, upon two years of current continuous service. Moreover, Mr. McCarthy has failed to indentify any action or communication on the part of the Commission (other than his SF-50 designation discussed above) that might establish a property interest in his employment. Accordingly, we conclude that Mr. McCarthy has failed to identify a property interest in his employment that would require cause to be shown or other procedures to be afforded with respect to his discharge. [2]

---

[2]    In his reply brief, Mr. McCarthy argues for the first time that he has a liberty interest in his good name that exists independently of a property interest. Pet'r's Reply Br. 4. We consider this argument to be waived. It is a general rule of appellate procedure that an appellant

B

Mr. McCarthy also contends that the record before us does not contain substantial evidence to support the Board's conclusion that the Commission proved by clear and convincing evidence that Mr. McCarthy would have been removed even in the absence of his protected disclosures. A "protected disclosure" is a disclosure which "an employee . . . reasonably believes evidences (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(a). To establish a protected disclosure under the WPA, an employee must demonstrate by a preponderance of the evidence that he disclosed information that he reasonably believed evidenced a violation of any law, rule, or regulation. *Id.* § 2302(b)(8). Here, the parties do not dispute that Mr. McCarthy made what would qualify as protected disclosures. Moreover, the Commission does not contest the Board's prima facie determination that Mr. McCarthy's disclosures were a contributing factor in the Commission's decision to terminate his employment.

If an employee establishes as a prima facie matter that a protected disclosure was a contributing factor, the burden shifts to the agency to establish by clear and convincing evidence that it would have taken the action even in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(2); *See Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1363 (Fed. Cir. 1998). In assessing

waives issues or arguments raised for the first time in a reply brief. *See Carbino v. West,* 168 F.3d 32, 34 (Fed. Cir. 1999); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 800 (Fed. Cir. 1990).

whether an agency has met its burden, the Board looks at three factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated. *See Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Here, the Board determined that the Commission established by clear and convincing evidence that it would have terminated Mr. McCarthy's position in the absence of his disclosures.

Mr. McCarthy attacks the evidence and the Board's reasoning with respect to all three *Carr* factors. As to the strength of the Commission's evidence in support of its action, Mr. McCarthy contends that the Board erroneously deferred to the administrative judge's credibility determination. Specifically, Mr. McCarthy asserts that the testimony of both Mr. Riera and Mr. Petz undermines Commissioner Ruth's credibility by proving that the final decision to terminate Mr. McCarthy's employment was made *after* his whistleblowing. According to Mr. McCarthy, an allegedly backdated memorandum purporting to justify his removal further undermines Commissioner Ruth's credibility. Additionally, Mr. McCarthy argues that the Commission has since embraced his reorganization opinions, thereby indicating that the tone and content of his opinions were not the true reasons he was fired. Mr. McCarthy also contends that because the content of his memoranda ultimately became the content of his whistleblowing disclosures, the Commission could not fire him for his memoranda.

As an initial matter, we note that "[t]he WPA is not a weapon in arguments over policy or a shield for insubor-

dinate conduct." *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). Mr. McCarthy's claim does not turn on the fact that the content of his protected disclosures overlapped with the content of his earlier memoranda. Moreover, we agree with the Board that "the question here is not ultimately whether the Commission or Mr. McCarthy was correct regarding their legal and policy difference," but whether the Commission had sufficiently strong evidence to support its personnel action. *McCarthy*, 116 M.S.P.R. at 624 n.15. We conclude that it did. As previously discussed, the administrative judge credited Commissioner Ruth's testimony that, after considering the issue for some time before, it was Mr. McCarthy's behavior during the July 27, 2009 staff meeting that ultimately fixed his decision to terminate Mr. McCarthy. The administrative judge also credited Commissioner Ruth's testimony that, even before the disclosures, he "became concerned about the quality of [Mr. McCarthy's] legal advice," which he described as "strange" and "unreasonable." *Id.* at 630.

This court has "held that 'an evaluation of witness credibility is within the discretion of the Board and that, in general, such evaluations are "virtually unreviewable" on appeal.'" *Kahn*, 618 F.3d at 1313 (citing *King v. Dep't of Health & Human Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998) (quoting *Clark v. Dep't of the Army*, 997 F.2d 1466, 1473 (Fed. Cir. 1993))). We have further clarified that this credibility determination must be "based on observations of the demeanor of a testifying witness such that the administrative judge's findings were explicitly or implicitly based on such observation of demeanor." *Haebe v. Dep't of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). In this case, the administrative judge noted that Commissioner Ruth "testified in a straight-forward manner, without equivocation, about his reaction to appellant's

behavior" and specifically based his credibility determination on Mr. McCarthy's demeanor. *Initial Decision*, slip op. at 21-22.

To be sure, a credibility determination may be upset if it is "inherently improbable or discredited by undisputed evidence or physical fact." *Gibson v. Dep't of Veterans Affairs,* 160 F.3d 722, 725-26 (Fed. Cir. 1998). Here, the evidence supports the Board's decision to defer to the administrative judge's credibility determination. Indeed, computer meta-data confirms that Commissioner Ruth began drafting the termination notice on July 18, 2009. Ms. Brandt, who testified that Commissioner Ruth discussed terminating Mr. McCarthy's employment as early as June 2009, further corroborated Commissioner Ruth's testimony.

Mr. McCarthy's reliance on Mr. Riera's testimony to undermine Commissioner Ruth's credibility is misplaced. Regarding the decision to terminate Mr. McCarthy, Mr. Riera testified that on July 31, 2009, Commissioner Ruth stated that "I thought long and hard last night, and this is what I have to do, and I don't want to discuss it." But this testimony does not necessarily contradict Commissioner Ruth's testimony that he made the decision to remove Mr. McCarthy at the July 27, 2009 meeting. And in any event, the administrative judge resolved any inconsistency when he determined that Commissioner Ruth was a credible witness. Similarly, Mr. Petz's testimony that Commissioner Ruth had no intention of firing Mr. McCarthy as of July 24, 2009 is not inconsistent with Commissioner Ruth's testimony that he made his decision on July 27, 2009. It is true that Mr. Petz sent a personal email to Mr. McCarthy stating that he was surprised that Commissioner Ruth had fired him. This "surprise," however, is contradicted by Mr. Petz's own testimony that

on or around July 20, 2009, he and Mr. Riera had been concerned about Commissioner Ruth's intentions of firing Mr. McCarthy and that he had counseled Mr. McCarthy to develop a better relationship with Commissioner Ruth. *Initial Decision*, slip op. at 8. And as the Commission explained at oral argument, the allegedly backdated memorandum is not backdated at all. Instead, Commissioner Ruth created the memorandum at issue on August 2, 2009 as a record of a meeting that allegedly took place between Mr. McCarthy and Mr. Ruth on July 23, 2009— hence, the July 23, 2009 date noted in the memorandum. The Commission never asserted that the memorandum was actually created on July 23, 2009. At bottom, substantial evidence supports the Board's determination that the Commission had a strong basis for terminating Mr. McCarthy's employment.

Mr. McCarthy also contends that the Board's conclusions with respect to the second and third *Carr* factors are not supported by substantial evidence. With respect to the second *Carr* factor, Mr. McCarthy argues that the Board was wrong to conclude that his protected disclosures created only a slight motive to retaliate. As discussed above, the Board found that there was no evidence that Commissioner Ruth actually read Mr. McCarthy's disclosures before the Commission terminated Mr. McCarthy. But according to Mr. McCarthy, Commissioner Ruth must have known the general content of Mr. McCarthy's disclosures, especially in light of Mr. McCarthy's previous memoranda and his email informing Commissioner Ruth of the disclosures. With respect to the third *Carr* factor, the Board found no evidence that the Commission takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. Mr. McCarthy, however, contends that the Board should have weighed this factor more heavily

against the Commission. Mr. McCarthy specifically argues that the Board failed to consider that two Commission employees, Mr. Graf and Ms. Forti, were similarly situated—yet they were not fired despite their allegedly divisive conduct.

Notwithstanding Mr. McCarthy's contentions with respect to *Carr* factors two and three, we agree with the Board that the ultimate inquiry is whether the Commission has carried its burden of providing clear and convincing evidence that the same action would have been taken absent the alleged whistleblowing. In *Whitmore v. Department of Labor*, we explained that:

> *Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor. The factors are merely appropriate and pertinent considerations for determining whether the agency carries its burden of proving by clear and convincing evidence that the same action would have been taken absent the whistleblowing.

680 F.3d 1353, 1374 (Fed. Cir. 2012) (citation omitted).

Here, the Commission provided strong evidence in support of its personnel action. In particular, Commissioner Ruth testified that, after months of dissatisfaction, he made the ultimate decision to terminate Mr. McCarthy before the alleged whistleblowing occurred. Based on Commissioner Ruth's demeanor and extensive corroborating evidence, the administrative judge found this testimony credible. We see no reason to disturb that credibility determination on appeal. While in many cases an analysis of all three *Carr* factors may be necessary to

demonstrate what an agency would have done absent whistleblowing,[3] in this case, the Commission has definitively established that it was actively working to remove Mr. McCarthy prior to his disclosures.

We therefore conclude that substantial evidence supports the Board's ultimate determination that the Commission proved by clear and convincing evidence that it would have terminated Mr. McCarthy even in the absence of his disclosures.

C

Mr. McCarthy criticizes a number of discovery and evidentiary rulings by the Board and the administrative judge. We have held that "[p]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988). "If an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail . . . he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." *Id.*

---

[3]     Indeed, we explained in *Whitmore* that:
To the extent such evidence exists, however, the agency is required to come forward with all reasonably pertinent evidence relating to *Carr* factor three. Failure to do so may be at the agency's peril. . . . Stated differently, the absence of any evidence concerning *Carr* factor three may well cause the agency to fail to prove its case overall.
*Id.* at 1374-75. But here, the Commission carried its ultimate burden of proving by clear and convincing evidence that the same action would have been taken even absent Mr. McCarthy's disclosures.

Mr. McCarthy primary contention is that the administrative judge abused his discretion in denying Mr. McCarthy's motions to compel. But according to the Commission, Mr. McCarthy's request failed to comply with 5 C.F.R. § 1201.73(e). That regulation states, in part, that "[before filing any motion to compel discovery, the moving party shall discuss the anticipated motion with the opposing party either in person or by telephone and the parties shall make a good faith effort to resolve the discovery dispute and narrow the areas of disagreement." 5 C.F.R. § 1201.73(e)(1). While Mr. McCarthy claims to have complied with this requirement, the Commission points out that Mr. McCarthy never meaningfully conferred before he filed the motion to compel and that his representatives simply demanded in a single email that the Commission withdraw all objections or he would file a motion to compel. After the administrative judge denied his motions to compel, Mr. McCarthy filed a motion for certification of an interlocutory appeal of the ruling, or in the alternative, for reconsideration. But Mr. McCarthy still failed to explain how he had complied with 5 C.F.R. § 1201.73(e).

Moreover, there can be no prejudice from any denial of Mr. McCarthy's motions because the administrative judge subsequently gave Mr. McCarthy an opportunity to attempt to obtain the documents he requested—an opportunity that Mr. McCarthy rejected. On January 14, 2010, just one day after Mr. McCarthy filed his motion for reconsideration, the administrative judge held a status conference. At that conference, the administrative judge "instructed [Mr. McCarthy] to file a written request to permit [him] personal access to the [Commission] and its document[s]." J.A. 499. Mr. McCarthy, however, refused to make what he perceived as "a last-minute, futile request for permission . . . to review such documents at

[Commission] headquarters . . . ." J.A. 519. On appeal in this court, Mr. McCarthy continues to assert that the administrative judge's discovery proposal was a "coy 'offer.'" Pet'r's Br. 52. But Mr. McCarthy provides no basis for his assertion. Having refused to follow the administrative judge's directions concerning the conduct of discovery, Mr. McCarthy's request for relief is without merit. Accordingly, we conclude that the administrative judge did not abuse his discretion in denying Mr. McCarthy's motions to compel.

Mr. McCarthy's reliance on *Whitmore* is unavailing. In that case, we held that "it is an abuse of discretion to categorically exclude all witnesses offered to testify as to evidence under the *Carr* factors on relevance grounds." *Whitmore*, 68 F.3d at 1370. Here, however, the administrative judge gave Mr. McCarthy an opportunity to request potentially relevant evidence, and Mr. McCarthy refused to avail himself of that opportunity.

With respect to Mr. McCarthy's contention that the administrative judge improperly admitted certain evidence and improperly excluded other evidence, we conclude that Mr. McCarthy has not demonstrated any prejudice from those alleged errors. For example, Mr. McCarthy complains that the administrative judge should not have relied on Commissioner Ruth's "Daytimer" entries and "other fraudulent, backdated notes." Mr. McCarthy, however, fails to explain how these entries prejudiced him. To be sure, the administrative judge cites a portion of the record where Commissioner Ruth read from his Daytimer entries regarding a meeting with Mr. Petz, which allegedly took place on July 20, 2009. *Initial Decision*, slip op. at 16. While the exact date of this meeting is disputed, both Mr. Petz and Commissioner Ruth testified that it occurred before the July 27, 2009

staff meeting and that they discussed terminating Mr. McCarthy. Simply put, Mr. McCarthy does not explain how the Daytimer entries prejudiced him in a way that affected the outcome his case. Mr. McCarthy also does not explain how he was prejudiced by the administrative judge's exclusion of other evidence. We therefore conclude that Mr. McCarthy has failed to show that the administrative judge abused his discretion with respect to his discovery and evidentiary rulings.

We have also considered Mr. McCarthy's remaining arguments and find them unpersuasive. Accordingly, we hold that Mr. McCarthy has failed to identify a property interest in his employment that would require due process to be afforded with respect to his discharge. We affirm the Board's conclusion that the Commission did not violate the WPA when it terminated Mr. McCarthy's employment. We also hold that the administrative judge did not abuse his discretion with respect to his discovery and evidentiary rulings.

## III. Conclusion

For the foregoing reasons, the decision of the Board is affirmed.

## Costs

Each party shall bear its own costs.

## **AFFIRMED**