# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TREVOR MCCARDLE,[1]

        Appellant,

        v.

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION,

        Agency.

DOCKET NUMBER
SF-1221-17-0270-W-2

DATE: January 6, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[2]

---

[1] The Board took official notice that Mr. McCardle died on August 4, 2019, while the petition for review was pending, and it issued a show cause order that invited the parties to file a motion for substitution. Petition for Review (PFR) File, Tab 5. In response to the show cause order, the appellant's attorney filed a motion for substitution, which requests that Yolanda Acuna, Mr. McCardle's sole heir, be substituted in his place. PFR File, Tab 6. The motion includes a letter of instruction from Ms. Acuna, a California death record from Lexis-Nexis, and a declaration made under penalty of perjury from Ms. Acuna. *Id.* at 6-8. If an appellant dies, the processing of an appeal will only be completed upon substitution of a proper party. 5 C.F.R. § 1201.35(a). Motions to substitute must be filed with the Board within 90 days after the death of a party except for good cause shown. 5 C.F.R. § 1201.35(b). The appellant's attorney filed the motion for substitution on March 23, 2022, which was more than 90 days after Mr. McCardle's death. However, in the absence of a timely substitution of a party, the processing of an appeal may continue if the interests of the proper party will not be prejudiced. 5 C.F.R. § 1201.35(c). No such prejudice exists here, and the agency has not opposed the motion; thus, we find it appropriate to continue with the processing of this appeal. Both Ms. Acuna and Mr. McCardle will be referred to as "the appellant."

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Michal B. Shinnar, Esquire and Renn C. Fowler, Esquire, Silver Spring, Maryland, for the appellant.

Michael J. O'Brien, New York, New York, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to find that the appellant satisfied his prima facie burden concerning his September 19, 2014 agency-wide email and L.T.'s complaint on his behalf to the Office of the Inspector General (OIG). We FURTHER MODIFY the initial decision to find that the agency proved by clear and convincing evidence that it

would have taken the same personnel actions against him in the absence of the email or the OIG complaint filed on his behalf. Except as expressly MODIFIED herein, we AFFIRM the administrative judge's decision to deny corrective action in the initial decision.

## BACKGROUND

¶2 The relevant background, as recited in the initial decision, is generally undisputed. *McCardle v. Equal Employment Opportunity Commission*, MSPB Docket No. SF-1221-17-0270-W-2, Appeal File (W-2 AF), Tab 15, Initial Decision (ID). The appellant was employed by the agency as a Paralegal Specialist. ID at 4. He filed a complaint with the Office of Special Counsel (OSC), alleging that the agency retaliated against him for whistleblowing disclosures and/or protected activity, and he filed a Board appeal after OSC concluded its investigation.[3] ID at 6-7; *McCardle v. Equal Employment Opportunity Commission*, MSPB Docket No. SF-1221-17-0270-W-1, Appeal File (W-1 AF).

¶3 The administrative judge implicitly found that the Board has jurisdiction over this matter, and he scheduled a hearing. ID at 8-9; W-1 AF, Tabs 22, 27, 41; W-2 AF, Tab 2. The appellant subsequently requested a decision on the written record. ID at 10; W-2 AF, Tab 6. The administrative judge issued an initial decision in which he denied the appellant's request for corrective action. ID at 10-20. The administrative judge indicated that the only relevant whistleblowing disclosure or protected activity was a January 2, 2014 OIG

---

[3] The appellant filed several other Board appeals challenging the agency's decision to indefinitely suspend him, to continue that indefinite suspension, and to remove him from Federal service. ID at 4, 6-7, 9; *McCardle v. Equal Employment Opportunity Commission*, MSPB Docket Nos. SF-0752-15-0230-I-1, SF-0752-15-0496-I-1, SF-0752-16-0689-I-3. The administrative judge reversed the indefinite suspension and continuation of the indefinite suspension actions because the agency failed to meet its burden of proof, but he upheld the removal action. The parties filed petition for review submissions in the 0230, 0496, and 0689 matters, which were addressed by the Board in separate orders.

complaint and the appellant's September 19, 2014 email; he further stated that the only relevant personnel actions were the agency's decision to place the appellant on administrative leave on September 23, 2014, and to require him, on September 29, 2014, to undergo a medical examination in order to be able to return to work. ID at 9-10; W-1 AF, Tab 3 at 83-86, Tab 45 at 5; W-2 AF, Tab 12 at 5 n.1. The administrative judge determined, among other things, that the appellant did not prove by preponderant evidence that he made whistleblowing disclosures or engaged in protected activity and the agency did not have any knowledge of the OIG complaint before it took the personnel actions against him. ID at 10-20. The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. Petition for Review (PFR) File, Tabs 1, 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶4        In order to establish a prima facie case of reprisal under the whistleblower protection statutes, the appellant must prove by preponderant evidence that (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A).[4] *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015). If the appellant makes out a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the whistleblowing disclosure or protected activity. *Id.*; 5 U.S.C. § 1221(e)(2).

---

[4] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283 (2017), was signed into law on December 12, 2017. Section 1097 of the NDAA amended various provisions of Title 5 of the United States Code. Our decision in this appeal would be the same under both pre- and post-NDAA law.

_The appellant proved by preponderant evidence that his September 19, 2014 agency-wide email contained a whistleblowing disclosure that was a contributing factor in the agency's decision to place him on administrative leave and to require him to obtain a medical examination before he could return to work._

¶5  In his September 19, 2014 agency-wide email, the appellant asserted, among other things, that someone "doctored" his Official Personnel File (OPF) "to make [his] 7-month enforcement stint [] look like a 90-day detail." W-1 AF, Tab 6 at 94-136. The administrative judge concluded in the initial decision that the appellant did not have a reasonable belief that he disclosed actions that evidenced wrongdoing under 5 U.S.C. § 2302(b). ID at 14-20. Significantly, the administrative judge relied on a July 29, 2013 performance plan certification, in which the appellant acknowledged that his detail to the Enforcement Unit began in July 2013, to find that the appellant did not have a reasonable belief that his detail lasted 7 months. ID at 18. The administrative judge noted that the agency had a practice of exercising its discretion to have employees perform tasks in other office sections without a formal detail. ID at 18-20. The administrative judge discussed the appellant's contention that the agency issued two Standard Form (SF) 50s within 2 days which evidenced wrongdoing, but he found that the agency was properly correcting an earlier mistake. ID at 18-19. On review, the appellant asserts that the administrative judge improperly applied the reasonable belief standard and erred when he found that the appellant did not make a whistleblowing disclosure in this email. PFR File, Tab 1 at 5-6, 9-11. We agree.

¶6  A whistleblowing disclosure is a disclosure of information that an employee "reasonably believes evidences . . . any violation of any law, rule, or regulation." 5 U.S.C. § 2302(b)(8)(A)(i). A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably concludes that the actions of the Government evidence wrongdoing as defined by the whistleblower protection statutes. _Lachance v. White_, 174 F.3d 1378 (Fed. Cir. 1999); _Scoggins v. Department of the Army_, 123 M.S.P.R. 592, ¶ 11 (2016).

¶7     The record reflects that the appellant began receiving work from the Enforcement Unit on May 7, 2013. W-1 AF, Tab 26 at 20. On August 2, 2013, the agency issued an SF-50 that detailed the appellant to the Enforcement Unit as an investigator, effective July 28, 2013, and not to exceed November 14, 2013. *Id.* at 22. On December 4, 2013, the appellant was still working in the Enforcement Unit and was arranging coverage with other coworkers for subsequent weeks in December. *Id.* at 25. On December 11, 2013, the agency extended the appellant's detail to March 3, 2014. W-1 AF, Tab 1 at 154. Just 2 days later, on December 13, 2013, the agency issued an SF-50 that terminated the appellant's detail, effective November 15, 2013. W-1 AF, Tab 26 at 24.

¶8     We have reviewed the appellant's performance appraisal record covering July 14 to October 14, 2013, which was signed both by him and by the supervisor of the Enforcement Unit. W-1 AF, Tab 31 at 27-38. Contrary to the administrative judge's finding that the appellant knew that the detail began in July 2013, both the appellant and the Enforcement Unit supervisor stated in their respective narrative portions of the performance appraisal record that the appellant's detail to the Enforcement Unit began in or around June 2013. *Id.* at 30, 38. Thus, we find that a disinterested person with knowledge of the essential facts would construe from these admissions that the appellant began performing work in the Enforcement Unit in or around June 2013.[5]

¶9     Similarly, a disinterested person with knowledge of the essential facts would conclude that the appellant continued to perform work as part of his detail in the Enforcement Unit until around December 4, 2013.[6] Indeed, the appellant's

---

[5] Even if we assumed for the purposes of our analysis that the July 14, 2013 start date of the appraisal period coincided with the start date of his detail, a different outcome is not warranted because a July 14, 2013 start date is 2 weeks earlier than the start of the detail as reflected in the appellant's OPF.

[6] The agency's decision to issue multiple SF-50s in mid-December 2013 to correct its own mistake in originally extending the appellant's detail does not warrant a different outcome because the record reflects that he continued to work in the Enforcement Unit

performance appraisal record for the period immediately following his detail was dated from December 4, 2013, to September 30, 2014, W-1 AF, Tab 31 at 39-49, which supports his contention that he worked in the Enforcement Unit after November 15, 2013.

¶10      This nearly 6-month time frame, from June to December 2013, far exceeds the July 28 to November 15, 2013 time frame memorialized in the appellant's OPF. Under these circumstances, we find that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant would reasonably conclude that his OPF did not correctly identify the start and end dates of his detail to the Enforcement Unit and the agency's apparent manipulation of his SF-50s evidenced some kind of wrongdoing.[7] *See, e.g.*, *Stiles v. Department of Homeland Security*, 116 M.S.P.R. 263, ¶ 17 (2011) (finding that an employee need not prove an actual violation to establish that he had a reasonable belief that his disclosure met the statutory criteria). For these reasons, we find that the appellant's September 19, 2014 email constituted a protected disclosure, and we modify the initial decision in this regard.[8]

¶11      We next consider whether the appellant's whistleblowing disclosure was a contributing factor in the agency's decision to place him on administrative leave and/or to require him to undergo a medical examination. To prove that a disclosure was a contributing factor in a personnel action, the appellant only need

---

for almost 3 weeks after the November 15, 2013 end date of the detail identified in his OPF.

[7] On review, the appellant cites 18 U.S.C. § 1001 and 5 C.F.R. § 293.103(b) to support his contention that he disclosed an agency violation of a law or regulation. PFR File, Tab 1 at 6. We find that the appellant's allegations that the agency doctored his OPF so obviously implicate a violation of a law, rule, or regulation that it was unnecessary for him to identify any specific law or regulation that he believed was violated. *DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999).

[8] Because we find that the appellant made a whistleblowing disclosure in his September 19, 2014 email, we need not address his arguments on review regarding other alleged disclosures that he made in this email. PFR File, Tab 1 at 7-8.

demonstrate that the fact of, or the content of, the disclosure was one of the factors that tended to affect the personnel action in any way. *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 10 (2003). The knowledge/timing test allows an employee to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*, ¶ 11; *see* 5 U.S.C. § 1221(e)(1).

¶12        The appellant proved that his September 19, 2014 email was a contributing factor in the agency's decision to place him on administrative leave on September 23, 2014, and to require, on September 29, 2014, that he obtain a medical examination in order to return to work. The knowledge element is satisfied because his email was sent to the entire agency and the agency officials who placed the appellant on administrative leave and ordered him to take the medical examination had knowledge of the email. W-1 AF, Tab 6 at 83-84, 94-98; W-2 AF, Tab 11 at 126-30. In fact, the appellant's first-level supervisor specifically referenced his September 19, 2014 email in the notice that required him to take a medical examination in order to return to work. W-1 AF, Tab 6 at 83. The timing element is satisfied because the agency placed the appellant on administrative leave and required him to take a medical examination 4 days and 10 days, respectively, after he sent the email. *See Mithen v. Department of Veterans Affairs*, 119 M.S.P.R. 215, ¶ 12 (2013) (finding that an interval of less than 2 weeks between the appellant's disclosure and the agency's decision to detail him established contributing factor under the knowledge/timing test); *McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 41 (2011) (concluding that a 3-day delay between the disclosure and the agency's decision to terminate the appellant is sufficiently proximate that a reasonable person could conclude that the disclosure was a contributing factor in

the termination), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012). Accordingly, we conclude that the appellant has satisfied his prima facie burden concerning his September 19, 2014 email.

The appellant proved by preponderant evidence that he was protected from retaliation by the OIG complaint filed on his behalf and that the OIG complaint was a contributing factor in the agency's order that he obtain a medical examination in order to return to work.

¶13     The record reflects that, on January 2, 2014, agency administrative judge L.T. submitted a complaint on the appellant's behalf to an OIG criminal investigator.[9] W-1 AF, Tab 26 at 17. The OIG complaint stated, among other things, that the appellant asked her to "raise" the issue of "falsified OPF documents/entries" concerning the duration of his detail by his second-level supervisor and other agency officials. *Id.* The OIG complaint also included numerous attachments, including correspondence between the appellant and his coworkers in the Enforcement Unit and the various SF-50s discussed above. *Id.* at 18-25.

¶14     In the initial decision, the administrative judge reviewed the declarations submitted by the appellant's first- and second-level supervisors, and he concluded that they did not have any knowledge of the OIG complaint before any of the personnel actions were taken. ID at 10-12. On review, the appellant asserts that the whistleblower protection statutes protect him from retaliation because L.T. filed the OIG complaint on his behalf and the administrative judge erred in his analysis of the agency officials' knowledge of this complaint. PFR File, Tab 1 at 12-14.

¶15     The appellant correctly notes that, in *Burrowes v. Department of the Interior*, 54 M.S.P.R. 547 (1992), and *Duda v. Department of Veterans Affairs*, 51 M.S.P.R. 444 (1991), the Board held that the provisions of the whistleblower

---

[9] We discern no error with the administrative judge's finding that the appellant did not prove by preponderant evidence that he made any contact with OIG that would constitute activity protected by 5 U.S.C. § 2302(b)(9)(C). ID at 10, 19-20.

protection statutes are not limited to employees who actually made the whistleblowing disclosures.[10]  PFR File, Tab 1 at 10-12.  Taken together, these cases demonstrate that protection under the whistleblower protection statutes extends to employees who have a relationship with the employee who made a whistleblowing disclosure or engaged in protected activity.  *Burrowes*, 54 M.S.P.R. at 550-51; *Duda*, 51 M.S.P.R. at 446-47.

¶16    *Burrowes* is instructive to our analysis.  There, the administrative law judge appellants alleged that the former Chief Judge, who was acting as their spokesperson, made statements to Congressional staffers disclosing agency management and abuse when he distributed their petition to Congress.  *Burrowes*, 54 M.S.P.R. at 551-52.  The Board noted that, under *Duda*, the Chief Judge's statements to Congressional staffers would protect the appellants from retaliation on the basis of the disclosure if he disclosed gross mismanagement or an abuse of authority on their behalf; however, the Board concluded that the appellants did not make a nonfrivolous allegation that the Chief Judge made such a protected disclosure on their behalf.  *Id.*

¶17    The OIG complaint in this matter stands in contrast to the alleged disclosure in *Burrowes*.  Pursuant to 5 U.S.C. § 2302(b)(9)(C), "disclosing information to the [OIG] . . . of an agency" constitutes protected activity.  We therefore conclude that the OIG complaint constitutes protected activity.  We further find that a sufficient relationship exists between the appellant and L.T. such that he is protected from retaliation as a result of L.T.'s protected activity.  Indeed, L.T. explicitly stated in the OIG complaint that the appellant "asked [her] to raise [the] issue of falsified OPF documents/entries" by various agency employees, he provided her with documentation to forward to OIG in support of his claims, and L.T. ultimately filed the OIG complaint in which she raised this issue on the

[10] Although *Burrowes* and *Duda* involved an earlier version of the whistleblower protection statutes, the parties have not identified, and we are not aware of, any change in the statutes that would warrant a different result.

appellant's behalf and included the documentation that he provided to her. W-1 AF, Tab 26 at 17.

¶18    Having determined that the appellant was protected from retaliation on the basis of the OIG complaint filed on his behalf, we must next evaluate whether the appellant has proven contributing factor.  There is no evidence whatsoever that the appellant's second-level supervisor had any notice of the OIG complaint before she placed him on administrative leave on September 23, 2014.  W-2 AF, Tab 11 at 126-27.  We therefore affirm the initial decision in this regard.  ID at 11-12.

¶19    The evidence is more complicated regarding the first-level supervisor's knowledge of an OIG complaint before she issued the September 29, 2014 letter that required him to obtain a medical examination before he returned to work. The first-level supervisor stated in her declaration that when she sent the appellant the letter, she "did not know that on January 2, 2014 [L.T.] had contacted [the OIG] on [the appellant's] behalf."  W-2 AF, Tab 11 at 129.  She further stated that she "first became aware of [L.T.'s] contact with [OIG] on [the appellant's behalf]" in August 2017.  *Id.* at 129-30.  However, on September 24, 2014, L.T. sent an email to the appellant's first-level supervisor and other agency officials which advised them that she had "corresponded via e-mail with several members of Congress . . . regarding the escalating [equal employment opportunity (EEO)] and [w]histleblower retaliation . . . affecting [her] co-workers (including [the appellant and his September 19, 2014 agency-wide email])."  W-2 AF, Tab 13 at 17.  The Chief Operating Officer responded that same day that she would forward L.T.'s email to the OIG for appropriate action.  *Id.* at 14.  The following day, on September 25, 2014, L.T. forwarded the Chief Operating Officer's response to the first-level supervisor and other agency officials, and she advised those recipients that "since January 2014," "official reports were made and evidence/documentation provided" to the OIG and the OIG "is (and has been) aware of" the allegations of retaliation for EEO activity and whistleblower

disclosures and the allegations described in the appellant's September 19, 2014 email. *Id.* at 14-15.

¶20     In contrast to the administrative judge, we find that the first-level supervisor's declaration, which narrowly identified when she learned that L.T. filed the OIG complaint on the appellant's behalf, is not dispositive on the issue of knowledge. Rather, we find it more likely than not that, on September 25, 2014, the first-level supervisor knew that the appellant or someone else who had knowledge of the allegations in his September 19, 2014 email previously filed an OIG report or complaint that described his allegations in that email in the context of a claim of retaliation for whistleblowing disclosures or protected activity. We therefore conclude that the appellant has satisfied the knowledge element.

¶21     Regarding the timing element, L.T.'s September 25, 2014 email predates by 4 days the first-level supervisor's September 29, 2014 decision to require him to take a medical examination in order to return to work. Thus, we find that the timing element is satisfied. Accordingly, we conclude that the appellant has proven by preponderant evidence that the OIG complaint on his behalf was a contributing factor in the agency's decision to require him to obtain a medical examination before returning to work. The appellant is not entitled to corrective action because the agency proved by clear and convincing evidence that it would have placed him on administrative leave and/or required him to obtain a medical examination in the absence of his September 19, 2014 email or the OIG complaint on his behalf.[11]

---

[11] For reasons that are unclear, neither party addressed the agency's clear and convincing burden in their respective closing submissions, below, despite the fact that the administrative judge gave notice of that burden. W-1 AF, Tab 41 at 9-10; W-2 AF, Tabs 11-14. Moreover, the petition for review submissions do not contain any significant discussion of this issue. PFR File, Tabs 1, 3-4. We further modify the initial decision to discuss the agency's burden in this regard.

¶22      In determining whether an agency has met its burden by clear and convincing evidence,[12] the Board considers the following factors:  (1) the strength of the agency's evidence in support of its actions; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not make protected disclosures or who did not engage in protected activity, but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015).  We have considered all of the pertinent evidence.  *Whitmore v. Department of Labor*, 680 F.3d 1353, 1358 (Fed. Cir. 2012).

¶23      There was strong evidence to place the appellant on administrative leave and to require him to obtain a medical examination in mid- to late-September 2014.  Importantly, the following events occurred within the previous 2 weeks:  (1) on September 5, 2014, the appellant made specific threats to a coworker that he wanted to kill someone; (2) the appellant's "increasingly hostile, intimidating, disruptive, and unpredictable" behavior; (3) complaints from the appellant's coworkers about their fear of his behavior; (4) on September 23, 2014, the Federal Protective Service inspected his office and discovered a box cutter in his backpack; and (5) several employees expressed "concern for their safety and the safety of others."  W-1 AF, Tab 6 at 83, Tab 31 at 132; W-2 AF, Tab 12 at 17.

¶24      The *Carr* factor describing the existence and strength of the agency's motive to retaliate favors the appellant because (1) the September 19, 2014 email identified by name the relevant agency officials who placed him on administrative leave and required him to obtain a medical examination, and he made several

---

[12] Clear and convincing evidence "is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e).  It is a higher standard than preponderant evidence.  *Id.*

disparaging comments about other senior agency officials and the agency's handling of his EEO matter, and (2) the appellant's email was referenced in L.T.'s September 25, 2014 correspondence with the agency officials about the OIG complaint in the context of a claim of retaliation for whistleblowing disclosures and/or protected activity. W-1 AF, Tab 6 at 94-98; *see Whitmore*, 680 F.3d at 1370 ("Those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees.").

¶25        Neither party has identified on review, nor are we aware of, any evidence regarding the third *Carr* factor. Although the agency does not have an affirmative burden to produce evidence concerning each and every *Carr* factor, our reviewing court has held that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," but that the failure to produce evidence "may be at the agency's peril," and may imperil the agency's overall case. *See Whitmore*, 680 F.3d at 1374-75. Moreover, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018).

¶26        Our reviewing court has further held that the *Carr* factors "are merely appropriate and pertinent considerations for determining whether the agency carries its burden of proving by clear and convincing evidence that the same action would have been taken absent the whistleblowing." *Whitmore*, 680 F.3d at 1374. Based on our review of the record, we conclude that the strength of the agency's evidence is powerful and persuasive, and it outweighs the other two *Carr* factors. Indeed, as discussed above, the agency's decision to place the appellant on paid administrative leave and to require him to obtain a medical examination was based on reports that the appellant began engaging in a pattern

of hostile and unprofessional behavior, to include his statement that he was going to kill someone, and the subsequent discovery of a box cutter in his backpack. The serious nature of these allegations justifies the agency's concern about the appellant's continued presence in the workplace. We are left with a firm belief that the agency would have placed the appellant on paid administrative leave and would have required him to obtain a medical examination absent his September 19, 2014 email or the OIG complaint on his behalf. Accordingly, we deny the appellant's request for corrective action.

## NOTICE OF APPEAL RIGHTS[13]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit

---

[14]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: _____/s/ for_____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.